UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| RYAN D. FULLER,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC., *et al.*,<br><br>Defendants. | CASE NO. 1:14-cv-1333<br><br>OPINION & ORDER<br>[Resolving Doc. 8] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Ryan Fuller asserts four claims against Defendants Corrections Corporation of America, Inc. ("CCA"), Barry Goodrich, and Vince Vantell arising out of Fuller's employment and termination as a CCA case manager.[1/] Defendants move to dismiss Plaintiff Ryan Fuller's complaint for failure to state a claim.[2/] For the following reasons, Defendants' motion is **GRANTED**.

## I. Background

In September 2010, Fuller began working for private prison contractor CCA. On January 1, 2012, CCA promoted Fuller and transferred him to Lake Erie Correctional Institution in Conneaut, Ohio. At that facility, Fuller provided "case management and counseling services to inmates and their families."[3/] Defendants Goodrich and Vantell served as CCA's warden and assistant warden, respectively.

Fuller first alleges that he was subject to a hostile work environment in violation of Title VII

[1/]Doc. 1
[2/]Doc. 8.
[3/]Doc. 1 at 2-3.

of the Civil Rights Act of 1964. Fuller, who is white, alleges that his African American supervisor, Katrenia Baker-Webb, harassed and mistreated Fuller because of his race. Fuller alleges that Baker-Webb constantly disparaged him, assigned him additional work, forced him to stay late to complete work, and, in 2010, wrote a memo criticizing Fuller and placed the memo in a communal area of the facility.[4/]

Second, Fuller claims a due process violation, alleging that the Defendants acted under of color of state law and terminated his employment without a hearing. Fuller argues that while CCA is a private actor, it performs a traditional state function and is liable for deprivation of constitutional rights under 42 U.S.C. § 1983.

Fuller alleges that on January 22, 2013, Associate Warden Vantell berated Fuller for not completing a form. Later that day, Warden Goodrich placed Fuller on administrative leave for insubordination. On February 6, 2013, Goodrich fired Fuller. Fuller was given seven days to file a written grievance challenging the termination. Fuller alleges that CCA did not provide Fuller the paperwork until after this time had run, "effectively denying [him] due process."[5/]

Third, Fuller asserts a claim for wrongful termination in violation of public policy. Fuller's complaint states that "Ohio has a strong public policy interest in promoting workplace safety, especially at a correctional facility." Fuller alleges that he brought safety concerns, including improper training and inconsistent enforcement of CCA's safety procedures, to Defendants' attention on several occasions. Fuller next alleges that during a January 2013 dispute with Defendant Vantell, Fuller asked to speak with an investigator from Ohio's Correctional Institution Inspection

---

[4/]Doc. 1 at 5-6.

[5/]*Id*. at 8.

Committee. Fuller states that a CCA employee "threatened [Fuller] into not speaking with" the investigator, and that Fuller was terminated because of his attempt to do so.[6]

Fourth, Fuller alleges that the Defendants defamed him. Fuller claims that CCA "would allow untrue, malicious, derogatory comments to be made about Plaintiff Fuller" to cause Fuller embarrassment; that "the details of such will be disclosed at trial," and that "the conduct of Defendants, jointly and severally, constituted defamation."[7]

## II. Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] The plausibility requirement is not "akin to a probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully."[9]

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."[10] "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[11] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations."[12]

## III. Analysis

---

[6] Doc. 1 at 9.
[7] *Id*. at 10.
[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[9] *Id.*
[10] Fed. R. Civ. P. 8(a)(2).
[11] *Iqbal,* 556 U.S. at 678-79 (citations omitted).
[12] *Id.*

**A. Hostile Work Environment Under Title VII**

"It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge."[13/] "The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation."[14/]

Fuller filed an EEOC complaint on April 22, 2013. In his April 2013 EEOC complaint, Fuller alleged a hostile work environment and described the situation as follows:

> On 01/22/2013 at CCA-Lake Erie Correctional Institution in Conneaut , Ohio, I Ryan Daniel Fuller (former case manager) was put in an unsafe/hostile work environment by Assistant Warden Vantell yelling at me in a very angry tone and hitting the DRC 4118's clipboard on the segregation C-Range wall. Due to me wishing to speak with a CIIC representative Johanna Souhl for help or guidance, I was [sic] retalliated against, placed on paid administrative, and later 02/06/2013 terminated for insubordination. I was not insubordinate at all to anyone and followed all policies and procedures.[15/]

The Sixth Circuit employs the "expected scope of the investigation test" to determine whether a previously filed EEOC charge satisfies the administrative prerequisite for a Title VII cause of action.[16/] "Pursuant to this rule, we have recognized that 'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'"[17/] "[T]he rationale for the expected scope of investigation test is that charges of discrimination filed with the EEOC often will be prepared by

---

[13/] *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001).

[14/] *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citing *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir.1998)).

[15/] Doc. 18-2 at 2.

[16/] *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002).

[17/] *Id*. (citing *Davis*, 157 F.3d at 463).

aggrieved laypersons without the assistance of counsel."[18] Thus, Plaintiffs ought not be barred from bringing claims "because the EEOC investigation should have been broader in scope."[19]

But even based on this lenient standard, the EEOC could not have reasonably been expected to investigate Fuller's current allegations based on those made in his April 2013 EEOC charge. The EEOC charge alleges an "unsafe/hostile work environment" because Defendant Vantell yelled at Fuller and hit a clipboard against a wall. The EEOC charge alleges retaliation because Fuller wanted to speak to an investigator, and that Fuller was fired under the false pretext of insubordination.

The allegations in Fuller's complaint are completely unrelated. Fuller alleges that Baker-Webb, not Vantell, created a hostile work environment based on a prolonged pattern of racial discrimination, not a single incident of yelling. Facts indicating a hostile work environment based on race are nowhere to be found in the EEOC charge.

The EEOC investigation into Defendant Vantell's actions could not reasonably be expected to also investigate a different set of circumstances, based on a different theory of wrongdoing, pertaining to an employee not named in the EEOC charge. Thus, Fuller has not exhausted administrative remedies as to the hostile work environment claim made in his complaint. Therefore, Fuller's first cause of action is **DISMISSED**.

**B. Deprivation of Due Process under § 1983**

Defendants argue that for employee relations purposes, CCA does not act under color of state law and thus cannot be liable under § 1983. Defendants also argue that Fuller has not pled facts that make it plausible that he had a property interest in continued employment.

---

[18] *Dixon*, 392 F.3d at 219.
[19] *Id.*

Private entities such as CCA are generally not subject to liability under § 1983. Liability for the violation of constitutional rights can be "invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."[20]

In their briefing on the issue of state action, the parties focus on materials well beyond the pleadings. Plaintiff, for instance, argues that directives from the Ohio Department of Rehabilitation and Corrections control CCA to such a degree that CCA's decision to fire Fuller is fairly attributable to the state.[21] Determining whether Ohio's regulation and control of CCA transforms CCA into a de facto state actor is a fact-bound inquiry not suitable for resolution at this stage.

But Fuller must also plead facts that make it plausible that he has a property interest in continued employment. An "employee does not have a property interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause."[22] In his complaint, Fuller pleads no facts that indicate – let alone make it plausible – that his employment would only be terminated for cause.

In his response brief, Fuller alleges he had a property interest in his job based on a contract implied from the circumstances of his employment.[23] CCA told Fuller he had seven days to file response to his termination and did not provide the paperwork for him to do so. According to Fuller, granting time to file a grievance meant that "a contract implied from the circumstances was formed, thereby creating a property interest, which Defendants breached . . . ."[24]

But a property interest in employment is not just any contract, whether formal or implied, that

---

[20] *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original).

[21] Doc. 18 at 9-13.

[22] *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989).

[23] Doc. 18 at 14.

[24] *Id*. (internal quotation marks omitted).

relates to employment. Fuller has alleged no facts related to his employment with CCA to indicate that he could be terminated only for good cause. Even if CCA breached an implied contract when it did not provide Fuller paperwork to file his grievance, nothing on the face on Fuller's complaint indicates that his position carried protection for termination without cause. Fuller's complaint alleges no facts indicating his employment was anything other than at will. As a result, he fails to state a claim for deprivation of due process because he fails to plausibly establish a property interest in further employment. Thus, his second cause of action is **DISMISSED**.

**C. Wrongful Termination in Violation of Public Policy**

Plaintiffs asserting wrongful termination in violation of public policy, a so-called *Greeley* claim, must show (1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element)"; (2) "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element)"; (3) the plaintiff's "dismissal was motivated by conduct related to the public policy (the *causation* element)"; and (4) Plaintiff's employer "lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)."[25]

With regard to the clarity element, a plaintiff has a "burden to articulate, by citation to its source, a specific public policy that [the employer] violated when it discharged him."[26] Indeed, the Ohio Supreme Court has held that a general citation to a public policy in favor of workplace safety is insufficient to establish a *Greeley* claim.[27] But Fuller's complaint makes precisely such a boilerplate allegation, claiming only that "Ohio has a strong public policy interest in promoting

---

[25] *Dohme v. Eurand Am., Inc.*, 956 N.E.2d 825, 829 (Ohio 2011).
[26] *Id*. at 830
[27] *Id*. at 829-30.

workplace safety, especially at a correctional facility."[28]

In his response brief, Fuller glides past this point and instead argues that he has established a prima facie case of retaliation under Ohio Revised Code § 4113.52, stating that he was terminated because he engaged in the protected activity of reporting Defendants' failure to properly train staff.[29] This statute is cited nowhere in Fuller's complaint, and the argument in Fuller's response brief appears to be a new cause of action alleging retaliation, rather than a *Greeley* claim.

"Unless the plaintiff asserts a public policy and identifies federal or state constitutional provisions, statutes, regulations, or common law that support the policy, a court may not presume to sua sponte identify the source of that policy."[30] Fuller has not done so in his complaint. The Court will not fill in the blanks for him. Therefore, Fuller's third cause of action is **DISMISSED.**

**D. Defamation**

Fuller's complaint contains virtually no detail as to the alleged defamation. Fuller does allege that in 2010, Katrenia Baker-Webb – who is not named as a Defendant – posted a memo criticizing Fuller in a public place. But Fuller alleges no specific facts to support the claim that the Defendants made defamatory comments about him, stating only that such details will be disclosed at trial.

Defendants, in moving to dismiss Fuller's complaint, note that Fuller was terminated on February 6, 2013, and that the one year statute of limitations on defamation ran before the complaint was filed. Fuller recognizes this deficiency, and "requests leave to amend his Complaint to provide additional facts that may be revealed in discovery" as to whether the claim is time barred. [31]

---

[28] Doc 1 at 8.
[29] Doc. 18 at 15.
[30] *Dohme*, 956 N.E. 2d. at 831.
[31] Doc. 18 at 16.

The statute of limitations notwithstanding, Fuller's complaint is entirely devoid of detail beyond recitation of the elements of defamation and bald legal conclusions. While pleading standards are lenient, they are not non-existent: Fuller has failed to plead any specific facts that make it plausible that any of the named Defendants have defamed him. Therefore, Fuller's fourth cause of action is **DISMISSED**.

## IV. Conclusion

For the foregoing reason, the Court **GRANTS** Defendant's motion to dismiss in its entirety. As the Court has identified insufficiencies in the pleadings, the claims are **DISMISSED WITHOUT PREJUDICE**, so as to allow Fuller to re-plead his claims with greater specificity by April 17, 2015.

IT IS SO ORDERED.

Dated: March 27, 2015

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE